(July 28, 2009)

■ NUSSBAUM DIAMONDS, LLC, Appellant, v THE HANOVER INSURANCE COMPANY, Respondent. [883 NYS2d 509]—

Order, Supreme Court, New York County (Milton A. Tingling, J.), entered March 13, 2008, which, insofar as appealed from, denied plaintiff's motion for summary judgment for full coverage under the subject insurance policy, affirmed, with costs.

Isaac Nussbaum, the principal of plaintiff Nussbaum Diamonds, LLC (Nussbaum), had a jeweler's block insurance policy issued by defendant the Hanover Insurance Company (Hanover), which he purchased on September 30, 1995. The policy covered Nussbaum's company against "all risks" of loss or damage to its merchandise for up to $4 million while in his store, subject to certain exclusions. Effective November 14, 2005, the parties amended the policy to add an endorsement providing coverage for up to $500,000, subject to a $10,000 deductible, for merchandise carried out of the office by a jewelry salesman named Yoel Grun. The "Insuring Conditions" section of the amended policy contains a number of exclusions, including the following:

"(5) THIS POLICY INSURES AGAINST ALL RISKS OF LOSS OF OR DAMAGE TO THE ABOVE DESCRIBED PROPERTY ARISING FROM ANY CAUSE WHATSOEVER EXCEPT . . . :

"(M) Unexplained loss, mysterious disappearance or loss or shortage disclosed on taking inventory."

On October 25, 2005, the condition (5) (M) exclusion was amended as follows: "It is understood and agreed that the Policy is extended to cover Mysterious Disappearance up to a limit of $250,000."

On the evening of November 28, 2005, Yoel Grun and Blair Grossbard left on a trip to sell diamonds for their employer, nonparty Espeka Fancy Diamonds (EFD). The two planned to make sales calls to EFD customers in Rochester, New York, and West Hartford, Connecticut. Grun rented a car and met Grossbard at EFD's offices. Grossbard collected the jewelry and separated it into two blue bags, one for each salesperson. These bags and Grun's computer bag were all placed in the back seat of the car. Although Grun worked for EFD, he occasionally sold Nussbaum's diamonds while on EFD trips. Grun was paid commissions for sales of Nussbaum's merchandise. Prior to this trip, Grun told Nussbaum about his sales meetings in Rochester and West Hartford, and he agreed to take some of Nussbaum's diamonds with him.

After leaving EFD's offices on the evening of November 28, Grun picked up a diamond ring and four loose diamonds from Nussbaum's office, signed for them, and placed them in a 6½-inch leather pouch. He clipped the pouch inside the waistband of his pants.

Grun and Grossbard then drove to Grossbard's apartment on the Upper East Side. On the way, Grun felt uncomfortable with the pouch in his waistband. He removed it and asked Grossbard to put it in his computer bag in the back seat. She refused, telling Grun that she was nauseous and did not want to turn around in a moving car. She handed the pouch back to Grun. He thought he remembered placing the pouch in the front right pocket of his pants.*

Between Nussbaum's offices and Rochester, Grun got out of the car four times. First, he pulled over on 82nd Street and Third Avenue, near Grossbard's apartment. While Grossbard went to get her things, Grun got out of the car and went into a nearby 7-Eleven store. He carried the two EFD bags with him, made a cup of coffee and bought some sandwiches. A surveillance video in the store showed that Grun left the EFD bags on

---

* A month after the trip, Grun testified that he remembered placing the pouch in his front right pants pocket. However, about five months later, he gave a more equivocal account. He testified that he *believed* that he put the pouch in his front right pocket, but he was not sure.

the floor in front of the cash register and walked away on two occasions, once for approximately seven seconds and again for approximately 10 seconds. After paying with a credit card that he put into his right pants pocket, Grun returned to the car. Grossbard then came downstairs with her husband. Grun got of the car again to greet Mr. Grossbard and they placed Mrs. Grossbard's luggage in the trunk of the car. Grun exited the car on two other occasions before reaching Rochester: once to change drivers several hours into the trip and a second time to use the bathroom and buy some items at a Fastrac gas station.

At about 3:00 A.M., Grun and Grossbard arrived at the Homeward Suites hotel. The two didn't like the way the hotel looked, and without getting out of the car they proceeded to a Hyatt in downtown Rochester. When Grun parked in the Hyatt parking lot, he realized that he was not carrying the Nussbaum diamonds. He got out of the car, checked his pockets, and asked Grossbard if she had seen the jewels. She said no, and Grun searched the car, checked all of his bags in the car and in the trunk, and asked Grossbard to do the same. Grun thought it likely that he had misplaced the diamonds when he stopped at the 7-Eleven in Manhattan, and Grossbard called the store to see if a leather pouch had been recovered. He also asked Grossbard to call her husband to ask him to look around their apartment and on Third Avenue, where the car had been parked, to see if there was a leather pouch on the ground.

The two drove to a parking area near the Hyatt and discussed retracing their steps back to New York City. They also discussed possible locations where the diamonds could have been lost. They eventually decided that they were too exhausted to drive back to the city. They checked into the Hyatt, went to a room, and searched their bags again inside the hotel. It was now approximately 5:00 A.M.

At Grossbard's urging, Grun tried to get some sleep. At 9:00 A.M. on November 29th, Grun called Nussbaum and told him that he had lost the diamonds. Nussbaum instructed him to call the police and get a report. Grun attempted to do so. However, the Rochester police refused to issue a report because the pouch containing the jewelry had last been seen in New York City. The New York City police also refused to issue a report, contending that Rochester had jurisdiction.

On November 29, 2005, Nussbaum contacted Hanover about the lost diamonds. Hanover's claims adjuster conducted an investigation and determined that there was coverage under the policy, but that because the loss qualified as a "mysterious disappearance," the amount of the loss in excess of $250,000 was

excluded. The adjuster also noted discrepancies between Grun's and Grossbard's accounts of the events. When Hanover failed to pay, Nussbaum commenced this action, seeking $490,000 (the $500,000 policy limit less the $10,000 deductible), plus interest. Hanover answered, denied liability, and asserted nine affirmative defenses. Nussbaum then brought a motion for summary judgment for (1) the $240,000 defendant conceded was owed and (2) payment of the remaining $250,000. While the motion was pending, Hanover paid the $240,000, without interest, but opposed that portion of Nussbaum's motion that sought summary judgment for the additional $250,000. The motion court granted Nussbaum partial summary judgment for the $240,000, but denied the remainder of its motion, finding issues of fact as to how the loss occurred.

On appeal, Nussbaum argues that because it had an "all risks policy," upon a showing of a loss of covered property, it was Hanover's duty to establish that the loss constituted a "mysterious disappearance." Hanover counters that it met its burden on the motion, that it paid $250,000 less the $10,000 deductible, and that the "mysterious disappearance" exclusion bars recovery of any greater sum.

To obtain summary judgment, Nussbaum was required to demonstrate (1) the existence of a valid "all risks" policy; (2) an insurable interest in the subject of the policy; and (3) the fortuitous loss of covered property, i.e., the diamond ring and the four loose diamonds (*International Multifoods Corp. v Commercial Union Ins. Co.*, 309 F3d 76, 83 [2d Cir 2002]). Nussbaum was not required to establish the cause of the loss of the jewelry in support of its claim (*Great N. Ins. Co. v Dayco Corp.*, 637 F Supp 765, 777 [SD NY 1986]; *see also In re Balfour MacLaine Intl. Ltd.*, 85 F3d 68, 77-78 [2d Cir 1996]; *Atlantic Lines Ltd. v American Motorists Ins. Co.*, 547 F2d 11, 13 [2d Cir 1976]).

The burden then shifted to Hanover to negate coverage based upon an enumerated exclusion in the policy, here, the "mysterious disappearance" exclusion. Hanover was required to establish "that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in [this] case" (*Continental Cas. Co. v Rapid-American Corp.*, 80 NY2d 640, 652 [1993]; *see Neuwirth v Blue Cross & Blue Shield of Greater N.Y., Blue Cross Assn.*, 62 NY2d 718 [1984]). Accordingly, to show that the "mysterious disappearance" exclusion applies in this case, Hanover was required to show that there was no plausible explanation for the loss of Nussbaum's diamonds. Factual issues regarding the events preceding the loss preclude such a finding at this stage in the litigation.

In *Maurice Goldman & Sons v Hanover Ins. Co.* (80 NY2d 986 [1992], *affg* 179 AD2d 388 [1992]) the Court of Appeals first addressed the application of the same "mysterious disappearance" exclusion invoked by Hanover here. The plaintiff in that case was on a business trip when he realized that a bag containing his company's jewelry was missing. He filed a claim under an "all risks" policy with an identical "mysterious disappearance" exclusion, which was denied. Plaintiff brought an action, and the insurer moved for summary judgment. The motion was granted. On appeal, plaintiff argued that the "mysterious disappearance" clause was ambiguous, because it was susceptible to the interpretation of excluding only a loss discovered on taking inventory. Both this Court and the Court of Appeals disagreed, finding that each of the three enumerated casualties under the exclusion—unexplained loss, mysterious disappearance, or loss or shortage disclosed on taking inventory—constituted an independent basis for exclusion. However, in direct contrast to this case, the plaintiff in *Goldman conceded*, and the appellate courts held, that the loss was "mysterious," and thus outside the ambit of coverage based upon the exclusion (*id.* at 988).

A case with facts more similar to those presented here is *S. Bellara Diamond Corp. v First Specialty Ins. Corp.* (287 AD2d 368 [2001]). In *S. Bellara*, a package of diamonds disappeared from a jeweler's desk. The "all risks" insurer denied coverage, on the ground that the loss constituted a "mysterious disappearance." In opposition to the insurer's motion for summary judgment, the jeweler could only "surmise" that as the diamonds were wrapped in paper, he may have accidentally thrown them into the waste basket as he hurriedly cleaned off his desk before leaving for lunch. This Court affirmed the denial of the insurer's motion for summary judgment, stating that the jeweler's explanation, "if believed by the trier of fact, could reasonably support an inference that the diamonds were accidentally thrown away" (*id.* at 369).

Similarly, in *Gurfein Bros. v Hanover Ins. Co.* (248 AD2d 227 [1998]), plaintiff's diamonds disappeared from the trunk of a salesman's car sometime during a two-day road trip from Memphis, Tennessee to Jackson, Mississippi. The salesman surmised that the diamonds could have been stolen from the trunk of his car when he pulled over on the highway to change a flat tire (*id.* at 227). However, the salesman did not see or hear anyone near his car as he was fixing the flat, and there was no direct evidence of theft. The motion court granted the insurer summary judgment based upon the "mysterious disappearance" exclusion, and this Court reversed. We held that

circumstantial evidence of a theft was not "so illogical, implausible or speculative as to warrant summary judgment for the insurer" based upon the mysterious disappearance exclusion, and we reinstated the complaint (*id.* at 231).

Finally, in *Stella Jewelry Mfg., Inc. v Naviga Belgamar* (885 F Supp 84 [SD NY 1995]), the president of a jewelry company was collecting two bags of jewelry from a friend's house. He parked his car in the circular driveway, and placed the bag next to his foot while he made room for it in the car's trunk. Approximately 10 seconds elapsed, during which time the man did not see or hear anything. He then bent down to pick up the bag, but it was gone. He made a claim with his insurer, under an "all risks" policy with a "mysterious disappearance" exclusion. The insurer invoked the exclusion on the ground that the loss was a "mystery" because the man did not see or hear anything during the 10 second interval in which the bag disappeared (*id.* at 85). The District Court granted the insured's motion for summary judgment, finding the exclusion inapplicable as a matter of law. It stated: "The facts as testified to by the only witness, Plaintiff's president, bespeak only of theft, albeit a mysterious theft with no evidence of a thief . . . There is no evidence from which one could deduce that the nylon bag had blown away or been lost in any other manner than by theft. Under those circumstances no reasonable jury could reach the conclusion that the loss occurred otherwise" (*id.* at 86).

In contrast to *Stella Jewelry*, here, as in *S. Bellara* and *Gurfein Bros.*, there are issues of fact precluding a determination, at this juncture, whether the "mysterious disappearance exclusion" is applicable. There are a number of explanations proffered by plaintiff for the disappearance of the small leather pouch of diamonds. The trip took over six hours, and Grun got out of the car at least four times between Nussbaum's office and Rochester. It is uncontested that while he was in the car, Grun removed the jewels from his waistband, where they were clipped as he left Nussbaum's office. Grun believes that he was carrying the jewels in his right pants pocket, which is also where cameras showed him putting the credit card used to purchase items at the 7-Eleven. When Grun discovered that the diamonds were missing, his initial thought was that he might have misplaced them at the 7-Eleven. While the surveillance cameras at the 7-Eleven do not specifically show the pouch falling from Grun's pocket, they do show that Grun was careless with the bags of EFD diamonds entrusted to him. The cameras show Grun leaving the EFD bags unattended on two occasions while in that store. It is also possible that the pouch somehow was

stolen between New York City and Rochester, or that it fell to the ground when Grun and Grossbard switched drivers, or at the Fastrac bathroom or convenience store. Because questions as to the plausibility of plaintiff's explanations cannot be resolved on the existing record, we affirm the determination of the motion court to deny plaintiff's motion for summary judgment. Concur—Gonzalez, P.J., Tom, Friedman and Acosta, JJ.

McGuire, J., concurs in a separate memorandum as follows: I agree that Supreme Court correctly denied Nussbaum's motion for summary judgment, but my reasoning differs from the majority's.

Unlike *Stella Jewelry Mfg., Inc. v Naviga Belgamar* (885 F Supp 84, 86 [SD NY 1995]), this is not a case in which the facts asserted by the insured "bespeak only of theft, albeit a mysterious theft with no evidence of a thief." Although Grun got out of the car at least four times between Nussbaum's office and Rochester, there was no testimony that he in fact was in physical possession of the diamonds when he got out of the car. If Grun was not in physical possession of them, their disappearance would be "mysterious," especially given the evidence that he and Grossbard conducted a thorough search of the car and the bags in the car, and that Grun searched his pockets. With respect to the possibility that Grun had been in physical possession of the diamonds on these occasions, Grun surmised that they may have fallen out of his right pants pocket. His earlier statement that he "remembered" putting the diamonds in his pocket was undercut by his later, equivocal testimony. But even assuming that the diamonds were in his pocket, no plausible explanation was provided bearing on how they got out of his pocket. To be sure, the security cameras at the 7-Eleven showed him putting into his right pants pocket the credit card he used to purchase items. On this record, however, it cannot be said that a reasonable jury could only conclude that the pouch fell out of his pocket when he took out his credit card, even putting aside that it is not clear that he put the credit card back in the same pocket from which he removed it. Moreover, although the security cameras show that Grun was not careful with the bags of jewels, the video certainly does not dispel the mystery as it does not show anyone touching the bags during the brief periods when Grun walked away from them. Although it is possible that the pouch somehow was stolen or somehow fell to the ground somewhere, these are mere speculative possibilities.

This is an odd case. Putting aside a theft by Grun himself, which would trigger a separate exclusion, one that Hanover did not rely on, it appears that there are only two possibilities: the

diamonds were stolen from Grun or they fell from his pocket (or otherwise were lost). Although Nussbaum would be entitled to full indemnification if either of these two possibilities caused the loss, the uncertainties on this record regarding precisely what happened to them (i.e., whether they were so stolen or lost) preclude full indemnification. Rather, these uncertainties raise a material issue of fact that precludes the conclusion that the "mysterious disappearance" exclusion is not applicable. A contrary conclusion would read that exclusion out of the policy.